FILED
2023 Dec-13  PM 04:59
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ALABAMA
## HUNTSVILLE DIVISION

|  |  |
|---|---|
| TIMOTHY DITMAN and JENNIFER DITMAN<br><br>Plaintiffs,<br><br>v.<br><br>LENNAR HOMES OF ALABAMA, LLC; LENNAR HOMES COASTAL REALTY, LLC; BRELAND COMPANIES, LLC; and BRELAND HOMES COASTAL, LLC<br><br>Defendants. | Civ. Case No._____<br><br>**COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## INTRODUCTION

1. Plaintiffs Timothy Ditman and Jennifer Ditman (collectively, "the Ditmans" or "Plaintiffs") are a couple seeking to purchase a home in the Huntsville, Alabama area, so that they can build equity and put down firm roots in the region that they already call home. The most important characteristic of their prospective home is that it must be accessible for Jennifer Ditman ("Ms. Ditman"), who is disabled from a neurological disorder that significantly affects her mobility and stability while standing, impairs her vision, limits her ability to reach down, and weakens her grip strength.

2. As diligent homebuyers, the Ditmans engaged in extensive research and on-site visits to assess the level of accessibility at potential homes for sale in the Huntsville area. Recognizing that a single-story floorplan would allow Ms. Ditman to safely access all parts of their home, the couple eventually identified townhomes for sale at the still-under-construction Clift Farm development. They were interested in a particular type of unit, one that had a three-

car garage at the back of the unit, marketed as a "Craftsman" style unit, that would accommodate their needs. They were excited about living in the community and even brought Mr. Ditman's mother along to visit the development.

3.      However, as construction progressed at Clift Farm, the Ditmans realized that there were significant accessibility problems at these townhomes and in the development more broadly. Once the exteriors were built, the townhomes were clearly inaccessible for Ms. Ditman, who uses a rollator/transport chair for mobility, because there were steps at the front entrance. The Ditmans also realized that integral elements of the floorplan, as pictured online and as evidenced by the as-built condition of units that the Ditmans observed under construction, would inhibit Ms. Ditman from getting through doorways with her rollator/transport chair, accessing the master toilet, installing necessary grab bars at toilets, and reaching light switches and thermostats.

4.      The Ditmans discovered that the common use features were also inaccessible. They could not locate an accessible parking spot at the mailbox facility used by homeowners in the development, and Ms. Ditman would not be able to reach all the mailboxes in the facility. The sidewalks featured inaccessible curb cuts and steep slopes that she would not be able to navigate safely.

5.      Clift Farm is a development designed by Breland Companies, LLC and Breland Homes Coastal, LLC (collectively, "Breland") and constructed by Lennar Homes of Alabama, LLC, Lennar Homes Coastal Realty, LLC (collectively, "Lennar") (collectively, "Defendants"). Breland designed the townhome units at issue in this Complaint, while Lennar constructs, markets, and sells them.

6.      Defendants have failed to design and construct single-story attached townhomes at Clift Farm in compliance with the accessibility requirements of the Fair Housing Act

("FHA"). These are not merely technical violations. Conditions such as steps and narrow doorways prevent Ms. Ditman from even entering these townhomes and moving throughout the unit, completely shutting her out from the property. Defendants' continued construction of noncompliant units prevents Plaintiffs from purchasing a townhome unit at the Clift Farm development that would allow Ms. Ditman to access and enjoy her home.

7.      Despite the fact that the Ditmans have put Defendants on notice of their accessibility violations, Defendants have continued to construct townhome units and public and common use areas at Clift Farm that are not accessible and do not comply with basic provisions of the FHA. This widespread noncompliance has prevented the Ditmans from making an offer to purchase a suitable home for which they are otherwise qualified.

8.      Defendants have begun construction on 130 Moss Brook Lane ("130 Moss Brook"), the only unit at Clift Farm that is not already constructed which would fully meet the Ditmans' needs, by pouring slab for the building's foundation and constructing framing. If that unit and the public and common use areas were built in accordance with FHA accessibility requirements, it would be the ideal home for the Ditmans. However, the Ditmans have observed numerous FHA violations at similar or identical townhomes in Clift Farm at other locations, violations which would inhibit Ms. Ditman from safely entering the home and accessing integral components of it. Defendants have refused to provide evidence that 130 Moss Brook will be built in full compliance with the FHA. Once Defendants have reached a certain stage of construction—very soon, now that slab has been poured and framing is being constructed—it will be very difficult or impossible to remediate Defendants' FHA violations for this unit, violations of which Defendants have been put on notice.

9.      Plaintiffs bring this action for declaratory, injunctive, and monetary relief against Defendants Lennar and Breland for discrimination on the basis of disability in violation of the

3

federal Fair Housing Act, 42 U.S.C. § 3601, *et seq.*; and Title III of the federal Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181, *et seq.*

10.     All of the FHA-covered townhomes and the public and common use areas at Clift Farm were designed and constructed, or they are owned or operated, by one or more Defendants. Each property consists of one or more buildings that contain dwelling units. In each building, there are at least four dwelling units that have living space on one floor. Each unit in each building is a dwelling covered by the accessibility requirements of the FHA, and the buildings contain covered multifamily dwellings required to be designed and constructed to be accessible for persons with disabilities. The public and common use areas of each property are also subject to the FHA's accessibility requirements.

11.     All of the FHA-covered townhomes at Clift Farm were designed and constructed for first occupancy after March 13, 1991.

12.     By designing, developing, constructing, and selling their properties in a way that denies people with disabilities full access to and use of these covered dwellings and common areas, Defendants have violated the FHA.

13.     Defendants' violations of the FHA's accessibility requirements at Clift Farm have serious and significant consequences for the Ditmans and for other homebuyers with disabilities. In their construction of the single-story attached townhome developments at Clift Farm, including the public and common use areas, Defendants have violated each of the seven key requirements for accessibility identified in the FHA. The ubiquitous violations mean that Ms. Ditman can neither access numerous integral features of these townhomes in their current state, nor access the public and common use areas at Clift Farm.

14.     Defendants have also violated the ADA by failing to provide required accessible features, such as a van-accessible parking space and an accessible route into and through the

front entrance at the model townhome at Clift Farm. Ms. Ditman has been unable to access the model home at 347 Hay Rake Drive, Madison, Alabama to engage in the homebuying process. She waited in the car while her husband inspected the model unit.

15.     Defendants' continuing construction of townhomes at Clift Farm that violate the FHA, as well as its failure to remediate FHA and ADA violations in public and common use areas at Clift Farm, as described herein, discriminate against people with disabilities in violation of the FHA, 42 U.S.C. § 3601, *et seq.*; and Title III of the ADA, 42 U.S.C. § 12181, *et seq.*

## JURISDICTION AND VENUE

16.     This Court has jurisdiction over this matter pursuant to 42 U.S.C. § 3613. This Court also has subject matter jurisdiction over this matter under 28 U.S.C. §§ 1331 and 1343 because it arises under the laws of the United States. Plaintiffs seek declaratory and injunctive relief under 28 U.S.C. 1343, 2201, and 2202.

17.     Venue is proper in this District and Division under 28 U.S.C. § 1391(b)(2) because a substantial part of the events or omissions giving rise to the claims occurred within this District and Division.

## PARTIES

**Plaintiffs**

18.     Plaintiffs Timothy and Jennifer Ditman are a married couple who live in Madison, Alabama. Jennifer Ditman is disabled from a neurological disorder that has caused her to become legally blind, lack grip strength in her dominant hand, and use a rollator/transport chair so that she can walk independently or be pushed by someone else when she becomes physically exhausted. The Ditmans currently reside in an apartment, but they wish to purchase an accessible

home in Madison, Alabama. The Ditmans have been searching in the area for a home that meets their needs for at least two years prior to the filing of this Complaint.

**Defendants**

19.     Defendant Lennar Homes of Alabama, LLC is a for-profit corporation organized under the laws of the state of Delaware and registered to do business in the state of Alabama, with its principal offices based in Birmingham, Alabama.

20.      Defendant Lennar Homes Coastal Realty, LLC is a for-profit corporation organized under the laws of the state of Florida and registered to do business in the states of Alabama and Florida, with its principal offices based in Miami, Florida. It participates in the design and construction of covered multifamily housing in both states.

21.     Defendant Breland Companies, LLC is a for-profit corporation organized under the laws of the state of Delaware and registered to do business in the state of Alabama, with its principal offices based in Huntsville, Alabama.

22.     Defendant Breland Homes Coastal, LLC is a for-profit corporation organized under the laws of the state of Delaware and registered to do business in the state of Alabama, with its principal offices based in Huntsville, Alabama.

**Developments with FHA-covered Townhomes for Sale**

23.     Each Defendant participated in the design and/or construction of townhome units covered by the FHA at Clift Farm, a development located in Madison, Alabama.

24.     Clift Farm contains approximately 50 single-story attached townhomes in groups of four or more. These townhomes are covered by the FHA. In addition, the public and common use areas of the Clift Farm development are covered by, and in violation of, the FHA. None of

the townhome floor plans, including the "Craftsman Unit 1," "Craftsman Unit 2," "1837," and "1850" floorplans, as they are marketed by Lennar, are in compliance with the FHA.

25.    Defendant Lennar acts as the residential developer of Clift Farm and participated in the design and construction of the FHA-covered townhome units.

26.    Breland Homes, LLC is the homebuilding asset of Breland Companies, LLC. Breland Homes, LLC was acquired by Lennar Corporation in 2021. Defendant Breland Companies, LLC acts as the master developer of FHA-covered townhomes at Clift Farm and participated in the design and construction of these units.

27.    Defendants have also failed to meet the accessibility requirements of the FHA in the design and construction of numerous property residential developments aside from Clift Farm. Upon information and belief, the Lennar Defendants have designed and constructed over two thousand three hundred (2,300) noncompliant townhome units in four states: Alabama, Florida, North Carolina, and South Carolina, a number of which also involved the Breland Defendants in the design and construction of the units.

## STATUTORY AND REGULATORY FRAMEWORK

28.    According to the Americans with Disabilities 2019 Study conducted by the American Community Survey of the U.S. Census Bureau, more than 40.78 million Americans have some form of disability. Of that number, more than 20.4 million people have an ambulatory disability that may require use of a wheelchair, walker, cane, or other assistive device. That number is expected to increase as the population ages and medical care allows people with disabilities to live longer and fuller lives. With an increasing proportion of the American population over the age of 65, and with the return to the civilian housing market of tens of thousands of veterans with disabilities, these numbers can reasonably be expected to increase.

Accessible housing is an essential means of ensuring that the many members of a community who have disabilities can fully participate in community life.

29.     To address this need, Congress enacted design and construction accessibility requirements in the Fair Housing Amendments Act ("FHAA") as part of a comprehensive revision of the FHA to prohibit discrimination on the basis of disability. The debates and legislative history of the FHAA reflect congressional findings that a person using a wheelchair or other mobility aid is just as effectively excluded from the opportunity to live in a particular dwelling by steps or thresholds at building or unit entrances and by too narrow doorways as by a posted sign saying "No Handicapped People Allowed." In considering the 1988 disability amendments to the FHA, Congress stressed that enforcement of the law is necessary to protect people with disabilities from the "devastating" impact of housing discrimination, including the "architectural barriers" erected by developers who fail to construct dwellings and public accommodations accessible to and adaptable by people with disabilities. H.R. REP. No. 100-711, at 25 (1988), reprinted in 1988 U.S.C.C.A.N. 2173, 2186.

30.     In response to congressional findings, the FHAA mandated that every multi-family building containing four (4) or more dwelling units and built for first occupancy after March 13, 1991 ("covered multifamily dwellings") be subject to certain design and construction requirements. All ground floor units in buildings without elevators and all units in buildings with elevators must comply with the following requirements:

    a.   An accessible building entrance on an accessible route;

    b.   Public and common use areas that are readily accessible to, and usable by, people with disabilities;

    c.   Doors into and within covered units that are sufficiently wide to allow passage by people in wheelchairs;

   d.   An accessible route into, through, and out of the dwelling;

   e.   Light switches, electrical outlets, thermostats, and other environmental controls in accessible locations;

   f.   Reinforcements in bathroom walls that allow for the later installation of grab bars; and

   g.   Usable kitchens and bathrooms so that an individual in a wheelchair can maneuver about the space.

Pursuant to congressional authority, the United States Department of Housing and Urban Development ("HUD") promulgated final FHAA design and construction regulations in January 1989, see 24 C.F.R. § 100.205 (2008), and published the final Fair Housing Act Accessibility Guidelines on March 6, 1991, which incorporate the requirements of the American National Standards Institute for buildings and facilities providing accessibility and usability for physically handicapped people, A117-1-1986, see 56 Fed. Reg. 9472 (Mar. 6, 1991), and the Fair Housing Act Design Manual in August 1996, which was revised in August 1998.

## FACTUAL BACKGROUND

**The Ditmans' Search for an Accessible Home**

31.   The Ditmans currently reside in an apartment rental unit in Madison, Alabama. Over two years prior to the filing of this Complaint, they began to search for a townhome to purchase that would be accessible for Ms. Ditman, who has several disabilities resulting from a neurological disorder. These disabilities limit Ms. Ditman's mobility and require her to live in a single-story home with no steps at the entrance, doorways sufficiently wide to allow passage of her rollator/transport chair, the potential for grab bars to be installed at the shower or tub and the toilet, and other accessible features.

32.     In the course of their search, the Ditmans visited or observed dozens of Lennar's single-story attached townhome units in person, both finished units and those still under construction, to find out whether the units could be accessible to and usable by Ms. Ditman.

33.     Clift Farm is one of the developments that the Ditmans have visited and researched. Clift Farm is attractive to the Ditmans because it is close to Mr. Ditman's place of work and to Ms. Ditman's brother who lives in the area. The Ditmans are also drawn to Clift Farm's amenities like the clubhouse and pool, to its quiet community environment, and to its proximity to grocery stores and local restaurants.

34.     Clift Farm was designed and/or constructed by Defendants and includes FHA-covered townhomes with single-story designs that Lennar markets as the "Craftsman Unit 1," "Craftsman Unit 2," "1837," and "1850" floorplans. Plaintiffs visited units in-person and/or viewed blueprints and online marketing photos for the floorplans at Clift Farm. The two "Craftsman"-style floorplans differ primarily in that "Craftsman Unit 2" offers a two-car garage, while "Craftsman Unit 1" offers a three-car garage and larger porch. Both "Craftsman" floorplans feature rear-facing garages, while the "1837" and "1850" floorplans feature front-facing garages.

35.     To assess whether this style of Lennar-marketed townhome would meet their accessibility needs, Plaintiffs visited or reviewed blueprints and online marketing photos for other developments with FHA-covered townhomes that were designed and/or constructed by Defendants in Alabama and Florida. These developments included covered townhomes with slightly different floorplans that Lennar markets as the "1730," "1837," and "1850" floorplans. (On information and belief, the numbers refer to the approximate square footage of the units.) These floorplans all feature front-facing garages when viewed from the street.

36.     Although the above-referenced floorplans differ in terms of square footage and the orientation of the garages, Plaintiffs' investigation has found that the accessibility violations are the same or similar among all of these different floorplans and in the common and public use areas at all of the developments that Plaintiffs researched, all of which were designed and/or constructed by Lennar and Breland.

37.     In sum, the Ditmans reviewed building plans, researched, and/or viewed units in-person for single-family attached townhomes in the following developments located in Alabama: Clift Farm, Pike Place at Clift Farm, Bradford Station, The Estuary, The Waters, and Nature's Walk on the Flint. The Ditmans also reviewed building plans and/or researched townhome units with similar floorplans at developments in Florida.

38.     The Ditmans were aware of the accessibility requirements, and when they reviewed these townhomes in the course of their homebuying search, the Ditmans documented situations which they believed constituted violations of HUD's requirements for accessibility. Mr. Ditman took photos of violations and prepared extensive notes.

39.     An expert in design and construction requirements under the FHA has visited Clift Farm and viewed both finished and unfinished townhome units and observed violations of the FHA accessibility requirements.

40.     *None* of the hundreds of Lennar single story attached townhome units that the Ditmans viewed or researched have been accessible for people with disabilities. They discovered that every townhome unit with the "1730," "1837," "1850," "Craftsman Unit 1," or "Craftsman Unit 2" floorplan, as marketed by Lennar, included multiple features that violate the FHA.

41.     The Ditmans were prepared to buy a home at Clift Farm in late 2021. They obtained preapproval for a loan at that time because they were interested in purchasing a

completed "Craftsman" unit located on Hay Rake Drive at Clift Farm that was listed for purchase around November 2021.

42.     When the Ditmans ascertained that there were FHA violations with the "Craftsman"-style townhomes at Clift Farm, they knew they could not purchase the home on Hay Rake Drive in its as-built condition because it would not be usable by Ms. Ditman. The unit was subsequently sold to another buyer in August 2022.

43.     Lennar has completed and sold numerous other inaccessible "Craftsman"-style townhomes at Clift Farm in the intervening time since November 2021.

44.     Most recently, the Ditmans have identified a specific townhome unit that they are interested in purchasing at Clift Farm with the address of 130 Moss Brook Lane, Madison, Alabama. The home is currently under construction and not yet accessible to Ms. Ditman. This "Craftsman Unit 1"-style home is an end unit, features a three-car garage, and is located near the Clift Farm mailbox facility and planned clubhouse, where residents will have access to a pool and other amenities. However, the plans for this townhome, like all townhomes with the Lennar-marketed floorplans identified in this Complaint, do not comply with the basic accessibility standards under the FHA.

45.     The FHA violations in public and common use areas of Clift Farm, described below, further impede the Ditmans' purchase of the unit at 130 Moss Brook or any unit at Clift Farm, because the couple knows that they will be unable to use and enjoy inaccessible amenities until such violations are remediated.

46.     Through correspondence with Defendants and communication with Defendants' counsel, Ditmans have put Lennar and Breland on notice of the specific FHA violations present at Clift Farm with the noncompliant townhomes and in the public and common use areas.

47.     Lennar continues to construct new townhomes at Clift Farm. Plaintiffs took the below photos on October 14, 2023 and November 11, 2023, respectively, which demonstrate that Lennar has not only poured the slab necessary to construct FHA-covered townhomes that are planned at and around their preferred unit at 130 Moss Brook, but has also begun constructing framing for 130 Moss Brook. If Lennar proceeds further with this construction, it will become nearly impossible to remedy the townhomes' FHA violations, such as the narrow doorways and the inaccessible toilet room in the master bathroom, because of the placement of fixtures and structural supports. Plaintiffs have no evidence that the new construction will comply with the FHA.



*Clift Farm, Construction on and around 130 Moss Brook Lane, Madison, AL, as of October 14, 2023*



*Clift Farm, Construction on 130 Moss Brook Lane, Madison, AL, as of November 11, 2023*

48.     130 Moss Brook is one of only three "Craftsman Unit 1" end-unit townhomes left to be constructed in Clift Farm. If 130 Moss Brook is constructed with FHA violations, there are just two other end units yet to be constructed (100 Moss Brook and 114 Moss Brook). 130 Moss Brook is the Ditmans' ideal unit if it were built to be compliant with the FHA. The Defendants have provided no evidence that it will be.

49.     The Ditmans have put Lennar and Breland on notice of their interest in acquiring a unit at this specific location, but Defendants have refused to provide evidence that assures the Ditmans that they will construct 130 Moss Brook in accordance with the FHA and thereby make it accessible to and usable for the Ditmans. Defendants have refused to provide assurances to the Plaintiffs that the other Clift Farm FHA-covered townhome units already completed or currently under construction comply or will comply with the accessibility requirements of the FHA, which would enable the Plaintiffs to visit future neighbors in the community. Defendants have also refused to provide assurances to the Ditmans that they have remediated FHA violations in public and common use areas at Clift Farm, as described below.

50.     Based on observations made in early December 2023, FHA violations still exist at townhome units currently under construction at Clift Farm. The following violations were observed: a five-inch step at the front door, no blocking in bathroom areas requiring blocking, and thermostats, light switches, and circuit breakers located outside of acceptable reach ranges.

51.     The Ditmans have qualified for financing, met with a sales agent at Clift Farm, and made Defendants aware that they are prepared to purchase a unit in their preferred location at Clift Farm, but Defendants' conduct in continuing to construct noncompliant townhomes and their failure to remediate violations in public and common use areas has prevented the Ditmans from buying their preferred unit with the assurance that their home would be accessible and safe for Ms. Ditman.

**Accessibility Violations at Clift Farm and other Developments with Single-Story Townhome Units for Sale**

52.     Although Lennar has not provided the Ditmans with any information about the accessibility-related components of the Ditmans' preferred unit at 130 Moss Brook, Lennar has already constructed "Craftsman"-style townhomes at Clift Farm that contain the following ubiquitous, consistent FHA violations (as well as ADA violations at the model home). The following are the violations that exist in the single-story townhome units that have already been constructed. On information and belief, the proposed unit at 130 Moss Brook will include the same violations.

53.     The following violations are listed in the order that the seven key accessibility requirements of the FHA are outlined in HUD's FHA Design Manual. Violations of these requirements may render a unit entirely inaccessible for a person with a mobility impairment, such as Ms. Ditman, like steps to a townhome's front door that inhibit a person with a wheelchair from entering the home.

*Lack of an Accessible Entrance on an Accessible Route*

54.     All or nearly all townhomes at Clift Farm fail to provide an accessible route from a pedestrian arrival area to the primary entrance of the homes, in violation of the FHA.

55.     All units that the Ditmans observed have either one or two steps leading to the front door. A number of units include two steps, with one step leading to the exterior landing and another at the door.



*Clift Farm, "1850" Units with Two Steps on the Route to the Primary Entrance*



*Clift Farm, Closer View of "1850" Unit with Two Steps on the Route to the Primary Entrance*

56.     Even where there is not a step leading to the exterior landing outside the front door, every unit that Plaintiffs viewed or researched at Clift Farm has a three to four-inch step at the threshold that violates the FHA and renders the entrance route inaccessible to residents or visitors with mobility impairments. These level changes and thresholds are evident in the below photo of a model home unit at Clift Farm, located at 347 Hay Rake Drive. The maximum height at the entrance should be one and one-quarter inches, so a wheelchair user can safely enter and exit the premises.



*Clift Farm, 3"-4" Step at Front Door to 347 Hay Rake Dr., Madison, AL*

57.     All of the primary entrances that Plaintiffs observed include inaccessible hardware that requires grasping and/or twisting—that is to say, a form of lever hardware. The inaccessible hardware is evident in the above photo.

58.     In most units, including the "Craftsman" units, there is not an accessible route from the garage to the interior of the unit, but several steps, which block a person with a mobility disability from getting from a parked vehicle to the interior of the unit without going outside.



*Clift Farm, Steps Leading In and Out of Garage*

59.     All or nearly all of the townhomes also included inaccessible steep slopes on the routes to the primary entrance, which includes the driveways for the "1730," "1837," and "1850" floorplans with front-facing garages. Many units have routes from the sidewalk that exceed the 5% slope allowed under the FHA, with some slopes greatly exceeding acceptable limits. None of the routes that Plaintiffs observed offered handrails even though slopes steeper than 5% require a handrail, edge protection, and other features under the FHA to increase accessibility.

*Lack of Accessible and Usable Public and Common Use Areas*

60.     Plaintiffs observed many features in the public and common use areas of the developments identified in this Complaint that violate the FHA.

61.     Clift Farm lacks FHA-compliant curb cuts that include an appropriate slope and cross-slope providing access to the sidewalk.

62.     Many developments, including Clift Farm, lack marked crosswalks that are part of an accessible route and which offer mobility-impaired pedestrians greater protection from traffic, in violation of the FHA.

63.     Additionally, many developments, including Clift Farms, lack accessible routes to common use amenities, like mailbox facilities and dog parks. For example, Clift Farm features a mailbox structure with parking spaces near the entrance. The sidewalk and curb cuts leading to the entrance are too steep for use by a wheelchair user; they fail to comply with FHA requirements and are inaccessible.



*Clift Farm, Inaccessible Route to Entrance at Mailbox Facility*

64.     Mailboxes inside the mailbox facility at Clift Farm and at other developments are mounted too high, above the maximum forty-eight-inch reach range required by the FHA.

65.     Clift Farm does not include at least one fully accessible parking space at each public and common use area that has parking, which allows a person with a disability to drive to

the area, park their vehicle, and access the common use area, as required by the FHA. The below picture demonstrates the lack of an accessible parking space with appropriate striping and signage at the Clift Farm mailbox facility.



*Clift Farm, Parking at Mailbox Facility*

66.     The "Craftsman Unit 1" model townhome at Clift Farm, located at 347 Hay Rake Drive, Madison, Alabama, violates the ADA and the FHA. The model townhome is open to the public and serves as the site of sales activities conducted by real estate agents and Lennar representatives. These sales activities include leading prospective buyers on tours of the model townhome, discussing the buying process, and presenting sales materials to prospective buyers.

67.     The model townhome at 347 Hay Rake Drive lacks a van-accessible parking space, an accessible route from the pedestrian arrival area to the primary entrance, and an accessible entrance with appropriate hardware in violation of the ADA, as shown in the below photos.



*Clift Farm, Lack of Van-Accessible Parking at Model Townhome*



*Clift Farm, Inaccessible Entrance and Route to Entrance at Model Townhome*

68.     The model townhome also violates the FHA because it will cease to function as a

model home and will be sold when the Clift Farm development is completed. The model

21

townhome includes the same floorplan and exterior features as the other FHA-covered townhomes at Clift Farm, and as such, it does not comply with FHA requirements, as described in this Complaint.

*Lack of Usable Doors*

69.     Most of the interior doors that Plaintiff observed inside the townhomes or reviewed on building plans violate the FHA's requirement for doors to be sufficiently wide for passage by people in wheelchairs. These violations are replicated in all of the townhome floorplans identified in this Complaint.

70.     For example, the clear opening at doors to the secondary bedrooms in the "Craftsman Unit 1" model unit at 347 Hay Rake Drive at Clift Farm are too narrow for a person with a wheelchair to use them, with the clear opening measuring thirty inches, less than the nominal thirty-two inches required under the FHA.



*Clift Farm, Clear Opening at Door to Secondary Bedroom Measuring 30"*

71.     Each of the floorplans identified in this Complaint feature a master bathroom toilet room that is closed off from the rest of the master bathroom. Plaintiffs documented that the clear opening at the door to this toilet room measures twenty-eight inches, significantly narrower than the nominal thirty-two inches required under the FHA.

72.     Plaintiffs measured the secondary bathroom door opening at only twenty-eight inches, failing to comply with the FHA.

73.     Plaintiffs observed architectural blueprints for "Craftsman"-style units at Clift Farm that contain these door violations. The blueprints show that the design included widths for the secondary bedroom doors at only thirty inches. The planned widths for the master bathroom toilet room and walk-in pantry doors were twenty-eight inches, all in violation of the FHA minimum width requirement of the nominal thirty-two inches for such doors which are designed for user passage.

74.     Plaintiffs viewed multiple units in the different developments identified in this Complaint, with the different but nearly identical floorplans also identified in this Complaint, and every unit included at least one door that failed to comply with the FHA's minimum dimensions for accessible doorways. Many units contained several doors that were too narrow.

75.     Plaintiffs' expert observed that marked measurements on the floors of units under construction included notations for noncompliant door widths, resulting in noncompliant construction. The below picture shows a unit under construction at Clift Farm that is marked "2/4" for the door width into the walk-in closet, indicating two feet and four inches (twenty-eight inches), well under the required nominal thirty-two inches required under the FHA for a walk-in room closet.



*Clift Farm, Floor Notation for Walk-in Closet Indicating 2/4: Two Feet and Four Inches, or 28"*

76.     Plaintiffs' expert also observed marked measurements on the floors of units under construction at Clift Farm indicating "2/6" for the door width into the master bathroom toilet room, indicating two feet and six inches (thirty inches), less than the required nominal thirty-two inches required under the FHA. This observation is demonstrated in the below photo.



*Clift Farm, Floor Notation for Master Bathroom Toilet Room Indicating 2/6: Two Feet and Six Inches, or 30"*

*Lack of an Accessible Route Into and Through the Covered Dwelling Unit*

77.    Plaintiffs' observation of both finished units and units under construction, and their review of floorplans, revealed the townhomes' lack of an accessible route throughout the home.

78.    The previously identified master bathroom toilet room lacks a thirty-six-inch-wide route into the toilet room, violating FHA requirements. This renders the master bathroom

toilet completely unusable for many people with disabilities. The below picture demonstrates these violations at the model "Craftsman Unit 1" unit at 347 Hay Rake Drive at Clift Farm.



*Clift Farm, Model Unit Master Bathroom Toilet Room*

79.     Plaintiffs observed many units that do not have an accessible route to the circuit breaker for the unit and an appropriate height for their use, in violation of the FHA requirement for an accessible route into and throughout the unit. The operable components of the circuit breakers in the townhomes that Plaintiffs viewed were located as high as fifty-nine inches, well outside the acceptable reach range of fifteen to forty-eight inches from the ground under the FHA. If an electrical hazard causes the circuit breaker to stop providing power, the controls in the circuit breaker box would be too high to be reachable by many people with disabilities.

*Lack of Environmental Controls Situated in Accessible Locations*

80.     In every townhome that Plaintiffs observed, both finished and unfinished, environmental controls in the townhome units were positioned outside of acceptable reach

ranges. Most or all controls were affected, rendering them largely unusable by many people with disabilities.

81.     Operable components of light switches were positioned above forty-eight inches in finished and unfinished "Craftsman" units that Plaintiffs viewed at Clift Farm, as demonstrated in the following photos.



*Clift Farm, Appx. 50"to Highest Operable Light Switch*



*Clift Farm, Appx. 49.5" to Highest Operable Light Switch*

82.     Plaintiffs also observed in finished townhome units that operable components of electrical outlets are situated lower than fifteen inches from the floor, in violation of the FHA. The below picture demonstrates this violation at Clift Farm.



*Clift Farm, Appx. 14" to Lowest Operable Outlet in Model Unit at 347 Hay Rake Drive, Madison, AL*

83.     Operable components of thermostats in all units Plaintiffs viewed at Clift Farm and townhomes in other developments were situated well above the maximum allowable height of forty-eight inches.

*Lack of Reinforced Walls for Grab Bars*

84.     Plaintiffs observed unfinished units that did not include wall reinforcements, or "blocking," behind shower stalls, tubs, and toilets, in violation of FHA accessibility requirements. The below picture demonstrates this violation in an unfinished unit at Clift Farm.



*Clift Farm, Back View of Installed Bathtub in Unfinished "Craftsman" Unit*

85.     The molded fiberglass shower/tub units in units observed by Plaintiffs lacked installed grab bars, and the lack of blocking behind these units would prevent later installation of grab bars by residents with disabilities. The curvature of the particular modular shower/tub components used in the townhomes would prevent the future installation of grab bars even if appropriate blocking were incorporated.

86.     The building plans that Plaintiffs observed lacked notations for the installation of blocking in bathrooms.

87.     Even if blocking had been installed around toilets, the narrow dimensions of the master bathroom toilet room would impede later installation of grab bars. Plaintiffs documented that the walls flanking this toilet measure only sixteen and one-half inches at maximum from the midline of the toilet, less than the requirement of eighteen inches for FHA compliance. These dimensions prevent people with disabilities from effectively reaching grab bars to use the toilet if

grab bars were later installed in these toilet rooms. The below picture demonstrates the dimensions of the "Craftsman Unit 1" model home toilet room at Clift Farm.



*Clift Farm, Appx. 16" from Toilet Midline to Adjacent Wall in Model Unit at 347 Hay Rake Drive, Madison, AL*

*Lack of Usable Kitchens and Bathrooms*

88.     Plaintiffs observed violations of this final main requirement for accessibility under the FHA that relate to the townhomes' bathroom design, described above.

89.     In addition, the previously identified master bathroom toilet room lacks a thirty by forty-eight-inch clear floor space outside the swing of the door and areas adjacent to the toilet, in violation of the FHA. This prevents a person using a wheelchair or walker, like Ms. Ditman, from maneuvering into and around the toilet room.

**Defendants Are Jointly and Severally Liable for Their FHA and ADA Violations**

90.     The Defendants worked together to design and construct the units at Clift Farm. The Breland entities designed the units and Breland's name is on the blueprints for the units in question. Breland's name is on the exterior side of the insulation. The Lennar entities construct, market, and sell the noncompliant units.

91.     In acting or omitting to act as alleged herein, each Defendant was acting through its employees, officers, and/or agents and is liable on the basis of the acts and omissions of its employees, officers, and/or agents.

92.     In acting or omitting to act as alleged herein, each employee, officer, or agent of each Defendant was acting in the course and scope of his or her actual or apparent authority pursuant to such agencies, or the alleged acts or omissions of each employee or officer as agent were subsequently ratified and adopted by one or more Defendants as principal.

93.     The violations alleged here constitute a continuing violation of the Fair Housing Act and Title III of the Americans with Disabilities Act. All of the properties have the same or similar violations, and the designers, developers, builders and operators of these properties are the same or related entities.

94.     As participants in the design and/or construction of noncompliant townhome units as well as public and common use areas at Clift Farm, Lennar and Breland are jointly and severally liable for FHA and ADA violations.

**INJURY TO PLAINTIFFS**

95.     As a result of Defendants' actions described above, Plaintiffs Timothy and Jennifer Ditman have been directly and substantially injured.

96.     As a direct, proximate, and foreseeable result of Defendants' actions as described herein, the Ditmans have suffered, continue to suffer, and will in the future suffer substantial, particularized, and concrete injuries.

97.     Defendants' unlawful conduct, policies, and practices have prevented, and continue to prevent, the Ditmans from being able to purchase the home they would like because it does not meet Ms. Ditman's accessibility needs as a person with mobility impairments.

31

Defendants' actions have stalled the Ditmans' homebuying process for years, preventing them from buying and moving into a home with which they could begin to build equity, instead of their current rental living situation.

98.     Defendants' conduct in continuing to construct noncompliant units—including the unit at 130 Moss Brook that the Ditmans have identified as meeting their needs—and Defendants' conduct in failing to remediate FHA violations in public and common use areas of Clift Farm, has deprived and will deprive the Ditmans of an equal housing opportunity to those without disabilities, and will further prolong the Ditmans' search for a home.

99.     The Ditmans have dedicated countless hours and significant energy to searching for a home that is suitable for a person with disabilities. Throughout the Ditmans' fruitless and exhausting search, Defendants have implicitly communicated to them that people with disabilities are not welcome at the townhomes in the developments identified in this Complaint. Defendants' conduct, policies, and practices have enacted dignitary and emotional harm upon Ms. Ditman as a person with disabilities who is excluded from these properties, as well as emotional harm upon Mr. Ditman, who cares deeply about his wife, her safety, and her wellbeing.

## CAUSES OF ACTION

### Count I: Violation of the Fair Housing Act of 1968, as amended
### 42 U.S.C. § 3601, *et seq.*

100.     Plaintiffs re-allege and incorporate by reference all allegations set forth in the paragraphs above.

101.     Through the actions and inactions described above, Defendants, together and separately, have:

    a.   discriminated in the sale or rental of, or otherwise made unavailable or denied, dwellings to persons because of their disabilities in violation of 42 U.S.C. § 3604(f)(1);

    b.   discriminated against persons because of their disabilities in the terms, conditions, or privileges of sale or rental of a dwelling, or in the provision of services or facilities in connection with the sale or rental of a dwelling, in violation of 42 U.S.C. § 3604(f)(2); and

    c.   failed to design and construct dwellings in compliance with the requirements mandated by 42 U.S.C. § 3604(f)(3)(C) and the applicable regulation, 24 C.F.R. § 100.205 (2008).

102.    The frequency and similarity of violations at public and common use areas and in individual units identified in the investigation by Plaintiffs at six developments with covered townhomes for sale (at minimum) demonstrate that Defendants have engaged in a pervasive and continuing pattern of designing and constructing dwelling units in violation of the FHA's accessibility requirements.

103.    As a result of Defendants' discriminatory conduct, Plaintiffs have suffered damages and are aggrieved persons, as defined in 42 U.S.C. § 3602(i).

## Count II: Violation of Title III of the Americans with Disabilities Act
### 42 U.S.C. § 12181, *et seq*.

104.    Plaintiffs re-allege and incorporate by reference all allegations set forth in the paragraphs above.

105.    Through the actions and inactions described above, Defendants, together and separately, have:

    a.   discriminated on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of a place of public accommodation, in violation of 42 U.S.C. § 12182(a); and

    b.   failed to design and construct facilities for first occupancy later than 30 months after July 26, 1990, that are readily accessible to and usable by individuals with disabilities, in violation of 42 U.S.C. § 12183(a)(1).

106.    As a result of Defendants' discriminatory conduct, Plaintiffs have suffered damages and are persons aggrieved per 42 U.S.C. § 2000a-3.

## PRAYER FOR RELIEF

WHEREFORE, for the foregoing reasons, Plaintiffs pray that this Court grant judgment in its favor, and against Defendants, as follows:

    a.   Declaring that Defendants' actions violate the Federal Fair Housing Act, 42 U.S.C. § 3601, *et seq*.; and Title III of the Americans with Disabilities Act, 42 U.S.C. § 12181, *et seq*.

    b.   Enjoining Defendants from engaging in the conduct described herein and directing Defendants to take all affirmative steps necessary to remedy the effects of the conduct described herein and to prevent additional instances of such conduct or similar conduct from occurring in the future;

    c.   Awarding compensatory damages to each Plaintiff in an amount to be determined by a jury that would fully compensate each Plaintiff for the injuries caused by the conduct of Defendants alleged herein;

    d.   Awarding punitive damages to each Plaintiff in an amount to be determined by a jury that would punish Defendants for the willful, wanton, and reckless conduct alleged herein and that would effectively deter similar conduct in the future;

    e.   Awarding reasonable attorneys' fees and costs; and

    f.   Awarding such other and further relief as this Court may deem just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all issues triable as of right.

Dated: December 12, 2023

<u>/s/ Mark Sabel</u>
Mark Sabel (SAB004)
Sabel Law Firm, L.L.C.
P.O. Box 231348
Montgomery, AL 36123
(334) 546-2161
mksabel@mindspring.com

Tara Ramchandani*
Sara K. Pratt*
Emily Curran*
Valerie Comenencia Ortiz*
RELMAN COLFAX PLLC
1225 19th Street, N.W., Suite 600
Washington, D.C. 20036
(202) 728-1888
tramchandani@relmanlaw.com
spratt@relmanlaw.com
ecurran@relmanlaw.com
vcomenenciaortiz@relmanlaw.com

*Pro Hac Vice Application to be Submitted*